UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————x

MICHAEL WALKER, Pro Se
                    Plaintiff,

        -against-

ROBERT SHAW, WARDEN,
GANG INTELLIGENCE UNIT,
THE CITY OF NEW YORK,
NEW YORK CITY DEPARTMENT OF CORRECTIONS,
DEPARTMENT OF PLACEMENT AND MOVEMENTS,
                    Defendants.

—————————————————————————x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/23/10__

08 Civ. 10043 (CM)

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

        Pro se plaintiff Michael Walker ("Plaintiff") brings this action pursuant to 42 U.S.C. §

1983 against the City of New York (the "City"), the New York City Department of Corrections,

the New York City Department of Placement and Movements, the George R. Vierno Center

Correctional Facility's Gang Intelligence Unit, and the Warden of the George R. Vierno Center,

Robert Shaw (collectively, "Defendants"). Plaintiff alleges that GRVC officials deprived him of

his right to due process by classifying him as an "SRG [Security Risk Group] Bloods gang

member" without giving him notice or affording him an opportunity to be heard. Plaintiff also

alleges that George R. Vierno Center Correctional Facility ("GRVC") officials exhibited

deliberate indifference to his well-being and put his life in danger by housing him in an area

occupied by members of the rival "Crips" gang for about two months. As a result, Plaintiff says

he was threatened by another inmate and feared for his life.

        On November 23, 2009, the City filed a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6). For the reasons set forth in more detail below, Plaintiff's complaint fails to

1        Copies mailed/faxed/handed to counsel on __6/23/10__

state a claim—he brings this action against three non-suable entities (the Department of Corrections, the Department of Placement and Movements and the Gang Intelligence Unit), has not adequately pleaded his claim for municipal liability against the City of New York, and has failed to allege that Warden Robert Shaw is amenable to suit, since Warden Shaw does not appear to have been personally involved in any of the facts giving rise to Plaintiff's claims.

However, Plaintiff has pleaded sufficient facts, which, if proven, would state a deliberate indifference claim against the specific (albeit as of yet unnamed) prison officials who are alleged to have deprived Plaintiff of his constitutional rights, and against Warden Shaw, assuming Warden Shaw was personally involved in the events giving rise to Plaintiff's claim. Because Plaintiff has failed to name these individual officials as defendants in this action, his complaint is dismissed with prejudice as to all claims against all named defendants except for his deliberate indifference claim against Warden Shaw, which is dismissed without prejudice. Plaintiff has 60 days from the date of this order to amend his complaint to name the relevant officials as defendants and/or to plead specific facts alleging that Warden Shaw was personally involved in the events underlying Plaintiff's claim. If Plaintiff fails to amend his complaint in the next 60 days, the Court will dismiss the action.

## BACKGROUND

### I.      Facts

Because Plaintiff is proceeding pro se, the Court looks to all of Plaintiff's pleadings and motion papers in ascertaining the facts underlying his claim.

Plaintiff was, at all relevant times, a pre-trial detainee at the GRVC. The GRVC has a policy of separating and housing inmates based on gang affiliation. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss, Dec. 15, 2009 ("Pl.'s Mem."), at 4.) Crips are housed in cell blocks

15, 17 and 19, and Bloods are housed in cell blocks 3–10. (Id.) This policy of separation extends to all areas of the GRVC, including the law library, the clinic, the yard, the gym room and the visiting area. (Id.) The policy is the result of "a long and violent history between these gangs," and the safety issues that arise when members of rival gangs are housed in close proximity to one another. (Id.)

In January 2008, Plaintiff was housed in a Crips cell block. On or about January 30, 2008, another inmate told Plaintiff that Plaintiff was classified as an "SRG [Security Risk Group] Bloods leader." (Am. Compl. at 3.) This inmate, who was a member of the Crips gang, confronted Plaintiff about his purported involvement in the Bloods immediately after speaking to a corrections officer. The Crips member suggested that this officer was "my boy." (Pl.'s Mem. at Addendum.) The Crips member told Plaintiff that he should "leave the 'Block'" because he "deserved to be fucked up," and that the "only thing saving [him] was [his] age." (Am. Compl. at 3.) (Plaintiff is fifty-two years old.)

Plaintiff alleges that he has never been a member of the Bloods gang and has never received a "ticket" for gang activity or for any other infraction. (Id.)

Plaintiff believed his life to be in danger while he was housed in a Crips cell block as a result of his SRG classification. Plaintiff alleges that a former inmate who had been a Crips gang member was killed while placed in a Bloods housing area. (Id. at 6.) The Court is certainly aware of the long-lasting feud between two vicious gangs; it has been a feature of a number of cases before this Court.

Plaintiff feared an attack by Crips inmates, so he went to "the bubble"—an enclosed security area in each housing unit that is manned by prison officers—to tell prison officials about his misclassification. (Id.) The officer on duty was the very officer who Plaintiff believed had

3

disclosed his (mis)classification as a Blood to the Crips gang member. According to Plaintiff, the (unnamed) officer in the "bubble" was "belligerent and uncooperative," and chased Plaintiff away, saying "get of [sic] [my] window with that shit." (Pl.'s Mem. at Addendum.)

Plaintiff then asked to speak to a captain. Although the officer in the bubble refused to give Plaintiff permission, the floor officer granted him access to Captain Van Williams and Gang Intelligence Officer Louis. They told Plaintiff that his classification was "a matter of security and they [would] get back to [him]—just wait." (Am. Compl. at 3.) Both officers allegedly were sympathetic to Plaintiff's claim that he had been erroneously classified; they indicated that Plaintiff was "probably . . . labelled [sic] erroneously by an overjealous [sic] officer in the intake, because the computer doesn't given [sic] any specifics as to why [he] was so labelled [sic], neither was [he] ever given a ticket for gang activity or for any other infraction." (Id.)

Plaintiff also complained to Security Captain Colon and Officer Stolely about his classification as a Blood, but "to no avail." (Id.) They "seem[ed] to find his situation funny" because they laughed at him. They also allegedly asked him to name other inmates who had threatened him as a condition to removing him from the Crips cell block.

   Plaintiff filed a grievance with the GRVC Grievance Committee. Because no grievance forms were available, Plaintiff put his name on a "programs list in the cell block" and "sp[oke] to three people about [his] complaint at the programs office." (Id. at 5-6.) He complained that he was wrongly classified as a Bloods gang member and then placed in a Crips housing area. (Id. at 5.) The Grievance Committee said only that his classification "was a security issue." (Id.) Neither the Grievance Committee nor the prison officials provided him with guidance or advice about what remedies were available to him. (Id. at 6.)

4

Plaintiff was moved to a different housing area in March, when his classification "went down." (Id.)

## II. Procedural History

Plaintiff filed a complaint with the Pro Se Office in the U.S. District Court, Southern District of New York on June 20, 2008.

By Order dated November 19, 2008, Judge Harold Baer, Jr. directed Plaintiff to amend his complaint within sixty days. (Pl.'s Mem. Ex. A.) On March 19, 2009, Judge Baer dismissed the complaint because he never received an amended complaint. But on April 3, 2008, Plaintiff submitted a Motion to Reconsider the Judgment, alleging that he had in fact submitted an amended complaint. Plaintiff attached his amended complaint to the motion. Judge Baer granted the motion and reopened the case. (Id.) The case was reassigned in accordance with the procedures of the Clerk's Office, and is now before this Court.

Defendants have moved to dismiss the amended complaint. They argue that (1) Plaintiff failed to state a claim for deprivation of due process, deliberate indifference or municipal liability; (2) Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e; (3) Plaintiff cannot recover damages for emotional or mental injury without a prior showing of physical injury, as required under PLRA § 1997e(e); (4) the Department of Corrections, Department of Placement and Movements and Gang Intelligence Unit are non-suable entities under the New York City Charter, Chapter 17 § 396; and (5) Warden Shaw (the only individual named as a defendant) was not alleged to have been personally involved in any conduct causing the deprivation of Plaintiff's constitutional rights, and should be dismissed from the suit.

The Court concludes that Plaintiff has failed to raise a viable constitutional claim for deprivation of due process or municipal liability, and therefore grants the motion to dismiss with respect to those claims. But Plaintiff has raised a claim of deliberate indifference against the GRVC prison officials who allegedly failed to promptly relocate him to a different cell block, and so the Court denies the Defendants' motion to dismiss Plaintiff's deliberate indifference claims. Finally, the Court grants the motion to dismiss Warden Shaw from the suit for lack of personal involvement.

## DISCUSSION

### I.    Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have

6

"nudged his claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950-51.

Despite this recent tightening of the standard for pleading a claim, complaints by pro se parties continue to be accorded more deference than those filed by attorneys. Erickson v. Pardus, 551 U.S. 89, 127 (2007). So Twombly and Iqbal notwithstanding, this Court must continue to "construe [a pro se complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." Weixel v. Bd. of Educ., 287 F.3d 138, 146 (2d Cir. 2002). Allegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss. Braxton v. Nichols, No. 08 Civ. 08568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).

## II.   Three Defendants Are Non-Suable Entities

As a threshold matter, Plaintiff has named the Department of Corrections ("DOC"), the Department of Placement and Movements ("DPM"), and the Gang Intelligence Unit ("GIU") as parties to this lawsuit. The DOC is a city agency, and the DPM and GIU are both departments within the DOC. (See Defs.' Mem. at 13.)

However, Plaintiff cannot sue an agency of the City of New York; he must sue the City. See N.Y. City Charter ch. 17, § 396. "[T]he overwhelming body of authority holds that DOC is not a suable entity." Renelique v. Doe, No. 99 Civ. 10425, 2003 WL 23023771, at *6 (S.D.N.Y. Dec. 29, 2003). Since the DPM and GIU are entities within the DOC, they too are non-suable entities. Therefore, to the extent that Plaintiff asserts § 1983 claims against the DOC, DPM and GIU, those claims are dismissed.

### III.   Plaintiff Has Failed to State a Claim for Deprivation of Due Process

Plaintiff asserts that he was deprived of due process because he was not notified about his classification as an SRG Bloods gang member or about the criteria used to classify him. (Pl.'s Mem. at 3.)

To succeed on a procedural due process claim, a plaintiff must establish that (1) he possessed a liberty interest, and (2) he was deprived of that interest through insufficient process. Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). "Liberty interests protected by the Fourteenth Amendment may arise from two sources— the Due Process Clause itself and the laws of the states." Hewitt v. Helms, 459 U.S. 460, 466 (1983).

It is well settled that the administrative classification of prisoners does not give rise to a protectable liberty interest under the Due Process Clause. See Hewitt, 459 U.S. at 468; Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994); Corvino v. Vt. Dep't of Corr., 933 F.2d 128, 129 (2d Cir. 1991). Administrative classification is used to separate potentially disruptive groups of inmates. It is precisely "the sort of [condition of] confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt, 459 U.S. at 468. Prison officials have "full discretion" to control conditions of confinement such as prisoner classification, and prisoners have "no legitimate statutory or constitutional entitlement sufficient to invoke due process" in connection with such conditions. Pugliese v. Nelson, 617 F.2d 916, 923 (2d Cir. 1980).

Because prisoners have no liberty interest in being free from classification, they are also not entitled to due process before they are classified or prior to the imposition of conditions necessitated by their classification. Cf. McFadden v. Solfaro, No. 95 Civ. 1148, 1998 WL 199923 (S.D.N.Y., 1998) (non-punitive transfers of inmates are a "condition of confinement"

8

that does not give rise to a liberty interest, and so plaintiff has no constitutional right to process
before or after a transfer).

States can create liberty interests through statutes or regulations, but in order to do so,
they must use "explicitly mandatory language in connection with . . . specific substantive
predicates." Hewitt, 459 U.S. at 472. A liberty interest could arise, for instance, when a state
creates "some right or justifiable expectation . . . that [a detainee] will not be transferred except
for misbehavior or upon the occurrence of other specified events." Cofone v. Munson, 594 F.2d
934, 937-38 (2d Cir. 1979) (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1975)). However,
"the mere adoption of procedural guidelines governing day-to-day prison administration, without
more, will not give rise to a state-generated liberty interest." Hewitt, 459 U.S. at 472; see also
Matiyn v. Henderson, 841 F.2d 31, 34 (2d Cir. 1988).

The New York City Board of Correction has implemented regulations (called "Minimum
Standards") that set forth procedures for the administrative classification of inmates in New York
City correctional facilities for security purposes:

(i)     [The security classification] shall be in writing and shall specify the basic
        objectives, the classification categories, the variables and criteria used, the
        procedures used and the specific consequences to the prisoner of placement in
        each category.

(ii)    It shall include at least two classification categories.

(iii)   It shall provide for an initial classification upon entrance into the corrections
        system. Such classification shall take into account only relevant factual
        information about the prisoner, capable of verification.

(iv)    It shall provide for involvement of the prisoner at every stage with adequate
        due process.

(v)     Prisoners placed in the most restrictive security status shall only be denied
        those rights, privileges and opportunities that are directly related to their status
        and which cannot be provided to them at a different time or place than
        provided to other prisoners.

9

(vi)    It shall provide mechanisms for review of prisoners placed in the most restrictive security status at intervals not to exceed four weeks for detainees and eight weeks for sentenced prisoners.

40 RCNY § 1-02(e).

If Plaintiff's allegations are true, then GRVC prison officials did not follow procedures when they classified Plaintiff as a Blood. According to Plaintiff, he was not notified in writing of his classification, was not involved in his classification or afforded any process, and was not given any classification review when he protested.

However, despite the City's use of mandatory language and the words "due process," several of my colleagues have concluded that the Minimum Standards do not create a protectable liberty interest. Adams v. Galletta, No. 96 Civ. 3750, 1999 WL 959368, at *5-6 (S.D.N.Y. Oct. 19, 1999) (Koeltl, J.); Korkala v. N.Y.C. Dep't of Corr., No. 84 Civ. 5740, 1986 WL 9798, at *4-5 (S.D.N.Y. Sep. 4, 1986) (Carter, J.). They place no "substantive limitations on official discretion," Korkala, 1986 WL 9798, at *4-5, and "do not purport to grant individual prisoners the right not to be in any particular category," Adams, 1999 WL 959368, at *5-6. The implementing regulation for the Minimum Standards (Directive 4505) also gives prison officials "unlimited discretion to select inmates for evaluation or reclassification and to determine whether . . . they may be assigned to restrictive housing units." Id. at *4-5; see also Adams, 1999 WL 959368, at *6. "[T]he adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the state chose to require." Korkala, 1986 WL 9798, at *4.

Because of the lack of a protectable liberty interest, the court in Korkala dismissed the due process claims of a prisoner who was wrongly classified as a maximum-security inmate and denied a proper hearing to address his classification. Korkala, 1986 WL 9798.

In the case at bar, which is analogous to <u>Korkala</u>, Plaintiff was also wrongly classified as a security risk. Plaintiff believes he should have received "constructive notice of being assessed" as an SRG Blood, and of the "criteria of assessment" used to classify him. (Am. Compl. at 3.) But neither the Due Process Clause nor the Minimum Standards gives rise to a liberty interest that protects Plaintiff from security classification (or mis-classification). And because Plaintiff's "designation [as an SRG Bloods member] is not the deprivation of a liberty interest, the prison authorities were not constitutionally required to afford due process in imposing it." <u>Adams</u>, 1999 WL 959368, at *6 n.2. Plaintiff's claim for denial of due process is dismissed.

## IV. Plaintiff Has Failed to State a Claim for Municipal Liability

In order to plead a § 1983 claim against a municipality, plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-91 (1978); <u>Sarus v. Rotundo</u>, 831 F.2d 397, 400 (2d Cir. 1987). A municipality may not be held liable solely on the basis of respondeat superior in a 1983 action. <u>Monell</u>, 436 U.S. at 694-95. Rather, the plaintiff must first allege "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . . Second, the plaintiff must establish a casual connection—an "affirmative link"—between the policy and deprivation of his constitutional rights." <u>Vippolis v. Village of Haverstraw</u>, 768 F.2d 40, 44 (2d Cir. 1985), <u>cert. denied</u>, 480 U.S. 916 (1987) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985)).

Plaintiff makes two separate claims of municipal liability against the City of New York. First, Plaintiff claims that his misclassification by the Gang Intelligence Unit was deliberate and "stem[med] from City policy." (Am. Compl. at 3, 6.) However, he alleges no specific facts to support his conclusory statement; rather, the facts alleged in his pleadings suggest either the

11

*absence* of any such policy or the failure to follow a policy (which is the antithesis of a link between policy and action).

Plaintiff was told by prison officials that he was likely misclassified by an "overjealous [sic] officer in the intake, because the computer doesn't give any specifics as to why [he] was so labelled [sic], neither was [he] ever given a ticket for gang activity or for any other infraction." (Am. Compl. at 3.) It appears the prison has in place some system of labeling inmates based on information collected and stored in its database, and the prior gang activity of the detainee. Plaintiff also describes in his motion papers the GRVC's policy of separating inmates based on gang affiliation—a policy that was created to prevent the safety issues that may arise when members of rival gangs are housed in close proximity to one another. (Pl.'s Mem. at 4.) There is no allegation of fact suggesting that GRVC prison officials followed a City policy by deliberately misclassifying Plaintiff as a member of one gang and then placing him in a rival gang's cell block.

Furthermore, Plaintiff pleads no facts to show that his misclassification was more than an isolated incident. A single incident alleged in a complaint can be sufficient to establish a municipal policy, but only if it is accomplished by a city official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Here, the individual officers in the Gang Intelligence Unit who were responsible for making the SRG assessments and classifying inmates are not alleged to have had final policymaking authority.

Second, Plaintiff also claims that the City failed to properly train its prison officials in making gang intelligence assessments. But he has not alleged any of the following elements of a failure-to-train claim: "(1) that a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; (2) that the situation presents the employee with 'a difficult

12

choice of the sort that training or supervision will make less difficult;' and (3) that 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" Cabble v. City of New York, No. 04 Civ. 9413, 2010 WL 1222035 (S.D.N.Y. Mar. 29, 2010) (quoting Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).

A "simple recitation that there was a failure to train. . . does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." Dwares v. City of New York, 985 F.2d 94, 100-101 (2d Cir. 1993). Because Plaintiff does not allege a single fact in support of this claim, both of Plaintiff's municipal liability claims are dismissed with prejudice.

## V.   Plaintiff's Claim for Deliberate Indifference

Plaintiff claims that unnamed prison officials acted with deliberate indifference to his safety by: (1) failing to promptly remove him from the Crips cell block once notified of his classification as a Blood; (2) disclosing his classification as a Blood to a Crips member; (3) laughing at him when he asked to be transferred; and (4) retaliating against him for accusing the officer in the bubble of disclosing his status, by demanding that he name other inmates who threatened him as a condition of removing him from the Crips cell block. (See Am. Compl. at 3; Pl.'s Mem. at 4.)

The failure to name as defendants any of the officials who allegedly did these things— even as "John Does" (there is no allegation that the warden or the only individual defendant in the caption did any of the above)—dooms this claim. However, this particular claim must be dismissed without prejudice.

Because "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law," the constitutional rights of a detainee are analyzed under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-36 (1979).

13

However, claims of prison officials' deliberate indifference to the health or safety of a prisoner are "analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009). "[P]rison officials owe the same duty to provide the same quantum of basic human needs and humane conditions of confinement to both [convicted inmates and pretrial detainees] . . . . [T]here is no legally significant situation in which a failure to provide an incarcerated individual with . . . protection from violence *is* punishment yet *is not* cruel and unusual." Id. (quoting Hare v. City of Corinth, Miss., 74 F.3d 633, 649 (5th Cir. 1996)). Therefore, Plaintiff's claims are analyzed under the Eighth Amendment "deliberate indifference" standard.

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain, and imposes a duty on prison officials to take "reasonable measures to guarantee the safety of inmates." Farmer, 511 U.S. at 532. In light of this duty, a prison official acts with deliberate indifference when two requirements are met: (1) a plaintiff was subjected to conditions posing a substantial risk of serious harm, and (2) the prison officials knew of and disregarded the risk by failing to take reasonable measure to abate the harm. Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S.825, 834 (1994)).

## A.    Prison Officials Failed to Promptly Remove Plaintiff From the Crips Cell Block

Plaintiff would meet both requirements of a deliberate indifference claim if he alleged that identified, responsible prison officials failed to promptly relocate him from the Crips cell block after he was classified as a Blood.

First, Plaintiff was subjected to a "substantial risk of serious harm" by prison officials, whose alleged acts or omissions were "sufficiently serious" as to create "unduly harsh conditions of confinement." Branham v. Meachum, 77 F.3d 626, 630 (2d Cir. 1996); see also Farmer, 511

14

U.S. at 834. Plaintiff requested a transfer from his Crips cell block in January 2008, when he first complained to prison officials about his misclassification as an SRG Blood. At that time, Plaintiff's classification as a Blood was known to at least one Crips inmate in the cell block, who threatened Plaintiff by saying that Plaintiff "deserved to be fucked up." (Am. Compl. at 3.) There had already been at least one prior instance of deadly gang violence between the Bloods and Crips at the GRVC, where a Crips member was killed while housed in a Bloods cell block, and the Court would have to be woefully ignorant not to be aware of the bloody history between these two deadly gangs. Yet prison officials did not grant Plaintiff's request to be removed from the Crips cell block until two months after Plaintiff's initial complaint.

Defendants argue that Plaintiff cannot maintain any claims for constitutional deprivation because he did not suffer any physical attack during those two months. (See Defs.' Br. at 9.) But an actual attack is not necessary to allege the existence of a substantial risk of serious harm, since it is based on hindsight rather than on "circumstances of which [an] official was aware at the time he acted or failed to act." Heisler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997).

In the absence of a physical attack, "extreme and officially sanctioned psychological harm" can also give rise to an Eighth Amendment Claim. See id. at 837. The fear of assault, when unaccompanied by specific threats or imminent harm, is "not the kind of extreme and officially sanctioned psychological harm that supports a claim of damages under the Eighth Amendment." Manos v. Decker, No. 03 Civ. 2370, 2005 WL 545215, at *8-9 (S.D.N.Y. Mar. 7, 2005); Cruz v. Hillman, No. 01. Civ. 4169, 2002 WL 31045864, at *8-9 (S.D.N.Y. May 16, 2002); Bolton v. Goord, 992 F. Supp. 604, 627 (S.D.N.Y. 1998). However, when a prisoner is subjected to specific threats from another inmate, and there are "indication[s] that the threat will be carried out," the failure of prison officials to act may give rise to a deliberate indifference

15

claim. Green v. City of N.Y. Dep't of Corr., No. 06 Civ. 4978, 2008 WL 2485402, at *6-7 (S.D.N.Y. June 19, 2008).

In Green v. City of New York Department of Corrections, a prisoner who was falsely designated as a member of the Netas gang claimed that prison officials acted with deliberate indifference by failing to change his designation for six months. The court dismissed the complaint for, among other things, the plaintiff's failure to allege that "any inmate perceived to be a Neta member was physically harmed." Green, 2008 WL 2485402, at *7.

In this case, unlike in Green, Plaintiff has alleged that the violent history between the Bloods and Crips caused at least one inmate to be killed while placed in the opposing gang's housing area. The existence of a policy of separating rival gang members further demonstrates that the threat of harm to inmates housed in a rival gang's cell block is real and significant. Due to these factors, the prison officials' failure to relocate Plaintiff created a substantial risk of serious harm to Plaintiff.

Plaintiff could also successfully allege that the responsible officers knew of and disregarded the risk by failing to take reasonable measure to abate the harm, provided he named them as defendants.

In order to act with "sufficient culpable intent" to constitute deliberate indifference, a prison official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. See Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The prison official "need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

16

Here, Plaintiff alleges that unnamed prison officials acted with the requisite mental state. Plaintiff complained to them numerous times. The officials knew that Plaintiff was classified as an SRG Bloods member and housed in a Crips cell block—facts from which they could draw the inference that Plaintiff was at a substantial risk of serious harm.

These officials also allegedly drew the inference that Plaintiff was subjected to a substantial risk of harm. A plaintiff can satisfy this criteria by "showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented or expressly noted by prison officials in the past, and . . . that the defendant[s] . . . had been exposed to information concerning the risk." Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (internal quotations and citations omitted). According to Plaintiff, the GRVC's policy of separating inmates based on gang affiliation is the result of "a long and violent history between [the Bloods and Crips]." (Pl.'s Mem. at 4.) The policy demonstrates that the prison is well aware of the substantial risk of attack to inmates who are affiliated with one gang and housed with members of a rival gang. Given that Plaintiff complained to several prison officials, including Gang Intelligence Officer Louis and Captain of Security Colon, Plaintiff has pleaded facts that establish that the prison officials knew that Plaintiff was subjected to a substantial risk of serious harm.

Yet the prison officials allegedly disregarded this risk by failing to take reasonable measures to abate the threatened harm to Plaintiff. They left Plaintiff in the Crips cell block for two months, while Plaintiff feared for his safety. Even if Plaintiff's SRG classification was a "security issue" that was not immediately addressable by the prison officials, this Court cannot think of any reason why Plaintiff could not have been moved to a different cell block in the

meantime. After all, Plaintiff was still classified as a Blood at that time, and his then-classification should have warranted an immediate relocation to a different housing area.

In Swift v. Tweddell, 582 F. Supp. 2d 437, 446-47 (W.D.N.Y. 2008), the court determined that prison officials took reasonable measures to protect the safety of a prisoner by granting the prisoner's request to be transferred to a different housing area within one or two hours of the prisoner's complaints about threats from other inmates. In contrast, the court in Warren v. Goord denied a motion to dismiss a prisoner's deliberate indifference claims against prison officials who were allegedly aware of a substantial risk to the prisoner's safety and did nothing to remedy the situation. Warren, 476 F. Supp. 2d at 412; see also Hayes v. New York City Department of Corrections, 84 F.3d 614, 621 (2d Cir. 1996) (determining that a genuine issue of fact existed about whether prison officials acted reasonably in denying the threatened prisoner a transfer, when the record indicated that another inmate who reported that he was threatened was transferred that same day, and DOC officials testified that "it is standard procedure to relocate an inmate whenever an inmate informs officials that his life is threatened").

In the present case, Plaintiff was left in the Crips cell block for two months, during which time nothing was done to move him, despite the threats to Plaintiff's safety. Plaintiff was relocated only upon his reclassification (i.e., not as a Blood) in March 2008. Given these facts, a trier of fact could conclude that the prison officials failed to take reasonable measures to abate the harm. Thus, Plaintiff's allegations relating to deliberate indifference are sufficient to state a cause of action against the individual officials who participated in the actions of which he complains.

However, Plaintiff has failed to name these individual officers in his amended complaint. Rather, Plaintiff brings his complaint against three non-suable entities as well as against the

GRVC Warden, Robert Shaw, who is not alleged to have been personally involved in the deprivation of Plaintiff's constitutional rights. The only other defendant Plaintiff has named in this case is the City of New York—but as explained above, Plaintiff fails to state a claim for municipal liability.

Plaintiff could amend his complaint to add these individuals as defendants if he knows their names or badge numbers; indeed, it is possible that he already knows who some of them are (Louis and Colon are possibilities). If not, Plaintiff could amend to sue "John Doe" defendants and then take discovery to learn the identity of the officers he wishes to sue. The Court grants Plaintiff 60 days from the date of this order to file an amended complaint that does one or the other.

**B.    Prison Officials Acted With Deliberate Indifference to Plaintiff's Safety by Disclosing Plaintiff's SRG Classification to a Crips Gang Member**

As with the officials discussed above, although Plaintiff has not named the prison official in "the bubble" as an individual defendant, he has also sufficiently pleaded that one corrections officer acted with deliberate indifference by disclosing Plaintiff's SRG classification to another inmate.

A prison official's disclosure of information about one inmate to other inmates may give rise to a cause of action if the "alleged disclosure . . . caused plaintiff to be subjected to any harm, actual or threatened." Swift v. Tweddell, 582 F. Supp. 2d 437, 447-48 (W.D.N.Y. 2008). Here, the officer in the bubble clearly created the substantial risk of serious harm to Plaintiff by disclosing Plaintiff's SRG Blood classification to a Crips inmate who was housed in the same Crips cell block as Plaintiff. Because of the officer's disclosure, Plaintiff was threatened by the Crips inmate, who told Plaintiff that he "deserved to be fucked up."

19

Furthermore, the officer allegedly knew of and disregarded the risks to Plaintiff by failing to take reasonable measures to abate the harm. The bubble is an enclosed security area within each housing area (Defs.' Mem. of Law in Supp. of Mot. to Dismiss, Nov. 23, 2009, at 3 n.3), and the officer in the bubble knew that Plaintiff was housed in his cell block—a Crips cell block. However, he allegedly still revealed Plaintiff's SRG Blood classification to the Crips inmate in the same cell block. Given the violent history between the rival gangs, and the GRVC's policy of separating inmates affiliated with rival gangs, the prison official allegedly drew the inference that his act subjected Plaintiff to a substantial risk of serious harm. See Warren v. Goord, 476 F. Supp. 2d 407, 411 (S.D.N.Y. 2007) (internal quotations and citations omitted).

Finally, this unnamed officer failed to take reasonable measures to abate the harm by chasing Plaintiff away from the bubble when Plaintiff tried to complain, saying "get of [sic] my window with that shit." (Pl.'s Mem. at Addendum.) Therefore, Plaintiff could state a claim against the prison official in the bubble—but he must identify and name his as a defendant.

## C. Prison Officials Did Not Act with Deliberate Indifference By Laughing When Plaintiff Asked To Be Transferred

Although Plaintiff's other deliberate indifference allegations do state a claim, his argument that Captain Colon and Officer Stolely (who are identified but not named as defendants) acted with deliberate indifference to his safety by laughing at him when he asked to be transferred is plainly insufficient.

Laughter, verbal harassment or even spitting by prison officials, when "unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right. Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 475 (S.D.N.Y. 1998); see also Show v. Patterson, 955 F. Supp. 182, 191-92 (S.D.N.Y. 1997); Greene v. Mazzuca, 485 F. Supp. 2d 447, 451 (S.D.N.Y. 2007); Moncrieffe v.

Witbeck, No. 97 Civ. 253, 2000 WL 949457, at (N.D.N.Y. June 29, 2000).  Therefore, Plaintiff

has failed to raise a deliberate indifference claim on the ground that two prison officials laughed

at him.

### D.    Prison Officials Did Not Retaliate Against Plaintiff By Asking Him To Name Other Inmates Who Threatened Him As A Condition of Relocating Plaintiff

Finally, Plaintiff claims that prison officials retaliated against him by asking him to name

other inmates that had threatened him as a condition to moving Plaintiff from the Crips cell

block.  Plaintiff believes the officials were retaliating against him for claiming that the officer in

the bubble had disclosed Plaintiff's SRG classification.

"Courts must approach prisoner claims of retaliation with skepticism and particular care"

for two reasons: they are "easily fabricated," and "any adverse action taken against a prisoner by

a prison official . . . can be characterized as a . . . retaliatory act."  Dawes, 239 F.3d at 491 (citing

Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  To plead retaliation, a plaintiff must

advance "non-conclusory allegations" that (1) he engaged in a protected action, (2) the prison

officials took adverse action against him, and (3) a causal connection existed between the

protected act and the adverse action.  See Dawes, 239 F.3d at 491-92.

Here, Plaintiff claims that Captain Colon and Officer Stolely took adverse action against

him by asking him to name other inmates who had threatened him as a condition of relocating

him.  But asking for information, in and of itself, does not amount to adverse action.  The issue is

whether conditioning a move that was dictated by safety concerns on providing information

constituted retaliation—not whether the request for information itself constituted retaliation.

Because Plaintiff alleges no facts to suggest that these two officials retaliated against him, the

Court dismisses Plaintiff's retaliation claims.

## VI.    Dismissal for Failure to Exhaust Administrative Grievances At This Stage Would Be Improper

Defendants assert the affirmative defense that Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions [under section 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The requirement cannot be satisfied by an "untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Instead, the plaintiff must properly exhaust his remedies by "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Id. at 90 (internal quotation marks omitted).

The Second Circuit has recognized three circumstances, however, that may excuse a plaintiff from the exhaustion requirements: (1) when administrative remedies are not available to plaintiff, (2) when defendant is estopped from asserting exhaustion as an affirmative defense, and (3) when special circumstances, such as a reasonable misunderstanding of the grievance procedures, otherwise justify the prisoner' failure to comply with the requirements. See Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Plaintiff contends that he exhausted administrative remedies by complaining to several prison officials, filing a grievance with the GRVC Grievance Committee, and filing a "follow up grievance as a form of appeal." (Am. Compl. at 4; Pl.'s Mem. at 6.)

These actions do not technically comply with the DOC Inmate Grievance Resolution Program ("IGRP"), which requires an inmate at Rikers Island must take the following four steps to exhaust his administrative remedies: (1) file a complaint with the grievance committee, (2) appeal to the facility warden, (3) appeal to the Central Office Review Committee, and (4) appeal to the NYC Board of Correction. (See DOC Directive 3375 R-A, at 1, available at http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.)

However, the pleadings raise the possibility that Plaintiff has met either one or two of the three exceptions excusing his failure to exhaust. First, Plaintiff's failure to exhaust could be excusable because administrative remedies were unavailable to him. See Macias, 495 F.2d at 41. Under DOC Directive 3375 R-A, certain "classification designations" are considered non-grievable, and SRG classifications may fall within that category. (Id. at 2.) None of the parties has briefed this issue, so the Court lacks an adequate basis from which to form a conclusion regarding grievability of SRG classifications.

Second, even if SRG classifications are grievable, there is evidence to suggest that Plaintiff was prevented from grieving. Every time Plaintiff complained about his classification as an SRG, he was told that it was a security issue. (Am. Compl. at 5.) He was unable to acquire a grievance form and instead had to file his grievance on a cell block "programs list." (Am. Compl. at 5-6.) He was never told that his grievances were denied, and he was never advised that he could appeal. He was never provided with available forms of relief. (Id.) In his complaint, Plaintiff answered to the question, "Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claims(s)?" by checking "No." (Am. Compl. at 5). At this stage of the litigation, these allegations are more than sufficient to warrant denial of defendants' motion to dismiss on failure to exhaust grounds.

See Burns v. Moore, 2002 WL 91607, at 4-5 (S.D.N.Y. 2002); Feliciano v. Goord, No. 97 Civ. 263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (holding that dismissal for failure to exhaust is not appropriate where plaintiff was unable to file a grievance as a result of prison officials' telling him that the incident he wished to complain about was not a "grievance matter" and refusing to provide him with grievance forms).

For these reasons, dismissal for failure to exhaust is not appropriate at this stage.

## VII.   The Claims Against Warden Shaw Are Dismissed

Plaintiff also names Warden of GRVC Robert Shaw as a Defendant to this lawsuit. However, § 1983 claims must be brought against officials who were personally involved in the conduct that allegedly violated a plaintiff's constitutional rights.  Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1983).  Since Plaintiff has failed to allege any personal involvement by Shaw, or even mention Shaw anywhere else in the Amended Complaint or motion papers, any § 1983 claims that Plaintiff asserts against Shaw are dismissed without prejudice.  However, since Plaintiff could plead a deliberate indifference claim against Warden Shaw, if Warden Shaw was involved in the events giving rise to Plaintiff's claim, Plaintiff is granted 60 days to replead his deliberate indifference claim against Warden Shaw.

## VIII.  No Claim for Unnecessary Searches as Seizures

As a final matter, Plaintiff mentions in the "Relief" section of his Amended Complaint that his classification "left [him] up to unnecessary and unreasonable searches."  (Am. Compl. at 6.)  But "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  Powell v. Schriver, 175 F.3d 107, 112 n.3 (2d Cir. 1999) (citing Hudson v. Palmer, 468 U.S. 517, 526 (1984)).  As Plaintiff does not even allege that he

was actually subjected to unnecessary searches as a result of his SRG classification, Plaintiff fails to raise a claim for any violation of his constitutional rights on those grounds.

## IX.     Failure to Meet the Physical Injury Requirement under PLRA § 1997e(e)

Under the PLRA, an inmate who seeks to recover compensatory damages for a mental or emotional injury must first establish that he has suffered a "physical injury." See 42 U.S.C. § 1997e(e); Petty v. Goord, No. 00 Civ. 803, 2008 WL 2604809, *6 (S.D.N.Y. June 25, 2008). However, a plaintiff is not required to show physical injury in order to recover nominal damages, punitive damages, or to obtain declaratory relief. In fact, it is error for courts not to award nominal damages in § 1983 actions when a constitutional violation has been established. See Robinson v. Cattaraugus, 147 F.3d 153, 162 (2d Cir. 1998).

Here, Plaintiff has failed to plead that he suffered a physical injury; therefore, he is barred from recovering compensatory damages for any alleged emotional injury he suffered. But he is still entitled to recover nominal and (potentially) punitive damages for the violation of his constitutional rights.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with prejudice as to all claims against all defendants except Plaintiff's deliberate indifference claim against Warden Shaw. Plaintiff is granted 60 days from the date of this order to replead his deliberate indifference claim, naming either (1) the appropriate individual defendants by name; or (2) "John Doe" defendants, listed separately so that it is possible to take discovery as to who they are. Within the 60 day period, Plaintiff must also plead specific facts alleging that Warden Shaw was personally involved in the events underlying Plaintiff's claim, or the Court will dismiss the

remaining claim against Warden Shaw. If Plaintiff fails to amend his complaint during the next 60 days, the Court will dismiss the action.

Plaintiff has also filed two motions to compel with this Court (docket nos. 21 and 27). The motion to compel at docket no. 27 was denied by Magistrate Judge Kevin Nathaniel Fox, on January 26, 2010. (See docket no. 30.) The magistrate judge has informed this Court that the motion to compel at docket no. 21 is a duplicate of the motion to compel at docket no. 27. Therefore, this Court now denies the motion to compel at docket no. 21.

The Clerk of the Court is instructed to remove the motion to dismiss (docket no. 16) and the motion to compel (docket no. 21) from the Court's active motion list.

This constitutes the order and decision of this Court.

Dated: June 23, 2010

_____
U.S.D.J.

BY FIRST CLASS MAIL TO:

Michael Walker, Plaintiff Pro Se
J201001532
354 Doremus Avenue
Newark, NJ 07105

Baree Nichole Fett
New York City Law Department
100 Church Street
New York, NY 10007

26